Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1537 | **DATE** | 11/9/2004 |
| **CASE TITLE** | Summers vs. UAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 03/15/05 at 9:00 a.m. For the reason stated in the attached memorandum opinion, defendant State Street Bank's motion to disqualify the law firm of Hagens Berman LLP from this action is denied. All discovery including fact and expert is to be completed by 03/09/05. The plaintiff's expert disclosures and reports are to be served by 02/09/05. The defendants' expert disclosures and reports are to be served by 02/23/05. Dispositive motions are to be filed by 04/08/05. Responses to the dispositive motions, if any, are to be filed by 04/22/05 and replies, if any, are to be filed by 04/29/05. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | **NOV 1 0 2004** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. Memorandum Opinion distributed in open Court. | | GMA docketing deputy initials | 65 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| MW courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY R. SUMMERS and GEORGE T. LENORMAND, individually and on behalf of all others similarly situated, | ) ) ) ) | **DOCKETED** NOV 1 0 2004 |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 03 C 1537 |
| UAL CORPORATION ESOP COMMITTEE, MARTY TORRES, BARRY WILSON, DOUG WALSH, IRA LEVY, DON CLEMENTS, CRAIG MUSA and STATE STREET BANK & TRUST COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant State Street Bank & Trust Company's ("State Street") motion to disqualify the firm of Hagens Berman LLP ("Berman") from this action. For the reasons stated below, we deny the motion for disqualification.

65

## BACKGROUND

In April of 2002, Berman brought a class action in another case on behalf of former Enron plan participants against plan fiduciaries alleging breaches of their fiduciary duties. Enron hired State Street as an independent fiduciary for the Enron plans and State Street contends that one of its tasks is to monitor the plans' participation in litigation matters and determining whether to participate in class actions on behalf of the plans, including the action filed by Berman against Enron. State Street claims that in October of 2002, in the Enron action State Street entered into a Joint Prosecution Agreement ("prosecution agreement") in order to memorialize the oral understanding of the parties and to ensure that confidential information that was being exchanged with State Street would be protected. State Street claims that for two years it has supplied Berman with confidential information which included how State Street complies with its fiduciary duties as a trustee of retirement plans that invest in employer securities.

In February of 2003, the Plaintiffs brought the instant action with Berman serving as their counsel, alleging breaches of fiduciary duty by fiduciaries charged with overseeing a plan for United Airline's employees ("United plan"). The instant action was temporarily stayed due to certain bankruptcy proceedings. On June 24, 2004, after the stay was lifted, Plaintiffs filed a motion for leave to file a second amended complaint adding State Street as a defendant. State Street requests that Berman be disqualified from this action due to State Street's past and continued

confidential relationship with Berman.

## LEGAL STANDARD

In ruling on a motion for disqualification the court should consider aspects of professional responsibility for an attorney such as maintaining the confidentiality of information. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). The court must also strive to "safeguard the sacrosanct privacy of the attorney-client relationship" and "maintain public confidence in the legal profession and assist[] in protecting the integrity of the judicial proceeding." *Id.* However, the Seventh Circuit has made it clear that "disqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Schiessle v. Stephens*, 717 F.2d 417, 419-21 (7th Cir. 1983)(quoting *Freeman*, 689 F.2d at 721).

## DISCUSSION

### I. Unfair Usage of Confidential Information

State Street argues that Berman should be disqualified because of its relationship with State Street covered under the prosecution agreement. However, the prosecution agreement involved State Street's employment as a fiduciary of the Enron plans and matters associated with the Enron action. State Street does not contend that the Enron plans and the United plan at issue in the instant action are in

any way related. State Street vaguely asserts that Berman, through its confidential relationship, has acquired knowledge "regarding what State Street believes its fiduciary duties are when it serves as a directed trustee of an ERISA plan with company stock investments. . . ." (Disqu. Mot. Mem. 5). State Street also complains that Berman learned State Street's "strategies in prosecuting the action against the Enron Defendants, including the direct trustee. . . ." (Reply. 2). However, State Street has failed to elaborate on these points. State Street also contends that it would be unfair for Berman to benefit from the confidential communications that Berman received from State Street. (Reply 2-3)(Disqu. Mot. Mem. 11-12). However, State Street has failed to point to any past or present confidential information that is at risk of misuse by Berman in the instant action.

As indicated above, disqualification is an extreme measure and a court should not take such a drastic step absent compelling evidence warranting such an action. State Street has failed to provide allegations with sufficient specificity to support its arguments concerning disqualification. State Street failed to point to any specific connection between the Enron action and the instant action, and only made a cursory mention of Berman's knowledge of State Street's operations in general in regards to litigation and the overseeing of plans. State Street argues vehemently that it has shared confidential information with Berman, but State Street fails to show that any of the information provided to Berman will have any relevance in regards to the instant action. State Street has thus failed to show that Berman has or will utilize

4

any confidential information provided to it by State Street under the prosecution agreement. The purpose for the "disqualification remedy" is the "need to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information, . . ., as well as to continue to achieve a high regard for the legal profession in the public mind. . . ." *Freeman*, 689 F.2d at 723. State Street has not shown that there is a danger of misuse of confidential information by Berman. In regards to inclusion of State Street as a defendant in the instant action, Berman has provided a reasonable explanation relating to the lifting of the stay in bankruptcy suit. State Street contends that Berman's assertion that it recently learned after the lifting of the stay, that State Street did not take steps to protect the value of the United plan is "disingenuous[]." (Mot. Mem. 6). However, State Street does not provide evidence to back up such a bold assertion. State Street has provided no evidence that shows an impropriety on the part of Berman.

State Street has provided a declaration by Randall J. Sunshine that asserts nothing more than the fact that State Street mailed a letter to Berman asking Berman to withdraw from this action. (Randall Decl. Par. 3). State Street also submitted a declaration by Kelly Q. Driscoll ("Driscoll"). However, in the declaration Driscoll admits that State Street's communications with Berman concerned the Enron action. (Driscoll Decel. Par 4). Driscoll asserts vaguely that Berman acquired special insights into "State Street's fiduciary practices and procedures." (Driscoll Decel. Par 4). However, Driscoll fails to elaborate in regards to this general assertion. Berman

has also provided a declaration by Clyde A. Platt which indicates that its relationship with State Street dealt with matters that were specifically related to the Enron action and that Berman did not obtain any special insight into State Street's operations that would unfairly benefit Berman in the instant action. (Platt Decl. Par 12-15). State Street's arguments fall woefully short of the specificity and evidence required to warrant such a drastic measure as the disqualification of an entire law firm from the instant action.

State Street also relies heavily on *GTE North, Inc. v. Apache Products Co.*, 914 F.Supp. 1575 (N.D. Ill. 1996) to support its position. In fact, the first sentence in State Street's memorandum addressing *GTE* on page 7 is entirely taken word for word from that opinion although we note an absence of quotation marks in State Street's brief. In *GTE*, the court addressed whether or not pursuant to ABA Model Rules of Professional Conduct 1.9, the attorney in question that "formerly represented a client in a matter" could represent a client in the case at hand on a matter and whether the matter was "the same or substantially related matter." *Id.* at 1579. In *GTE* the court noted the application of the "substantial relationship test" employed by the Seventh Circuit. *Id.* n.4. Unlike the instant action, in *GTE* the court noted that the attorney in question did "not contest the fact that the matters are the same or substantially related. . . ." *Id.* In the instant action, State Street has not shown that the Enron action and the instant action are substantially related. The court in *GTE* notes that the third step in the substantial relationship test analysis is to

determine "whether that [confidential] information is relevant to the issues raised in the litigation pending against the former client." *Id.* State Street's vague assertions regarding its general procedures are insufficient to show that any information was obtained by Berman that would warrant a disqualification.

The instant action is also distinguishable from *GTE* because in the instant action, under the prosecution agreement, State Street expressly agreed to waive its right to seek disqualification against Berman. In contrast, in *GTE*, under the agreement that was at issue "each member agreed to abide by its allocated share of responsibility and agreed not to sue or take civil action against any other member." *Id.* at 1577. We also note that *GTE* is not controlling authority.

## II. Implied Professional Relationship

State Street argues that there was an implied attorney-client relationship between State Street and Berman under the prosecution agreement. State Street cites several cases that are not controlling precedent on this issue and relies upon *Westinghouse Elec. Corp. v. Kerr-McGee Corp*, 580 F.2d 1311 (7th Cir. 1978) to support its position regarding an implied attorney-client relationship. In *Westinghouse*, the court recognized several scenarios where there was no "express attorney-client relationship," but there may still exist "an implied professional relation." *Id.* at 1319. One of the scenarios mentioned is "[w]hen information is exchanged between co-defendants and their attorneys in a criminal case, an attorney

who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants, even though that co-defendant is not the one which he represented in the criminal case." *Id.* However, the instant case is a civil action and the unique interests and conflicts at issue in a criminal case between co-defendants are not at issue in the instant action. Another scenario that was mentioned by the court in *Westinghouse* is where "an auditor's regional counsel was instrumental in hiring a second law firm to represent some plaintiffs suing the auditor and where the second firm through such relationship was in a position to receive privileged information. . . ." *Id.* at 1319. The court referred to a specific case involving the scenario and noted that in that case the "second law firm, although having no direct attorney-client relationship with the auditor, was disqualified from representing the plaintiffs." *Id.* We have no such relationships or conflicts in the instant action and there is no indication that the Enron action or the instant action are related in such a manner.

State Street also points to the statement in *Westinghouse* that "[a] fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged." *Id.* at 1320. We recognize the need to keep confidential information secret. However, State Street has failed to offer more than conclusory statements in regards to the alleged confidential information at issue in regards to the disqualification and thus we cannot

find that even based on the nature of the work connected with the prosecution agreement that an implied professional relation was formed between State Street and Berman. Based on the evidence presented, and other indications, such as State Street's agreement in the prosecution agreement to waive seeking a disqualification against Berman, show that no such professional relationship was envisioned by the parties. Therefore, we deny the motion for disqualification.

## CONCLUSION

Based on the foregoing analysis, we deny the motion for disqualification.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 9, 2004