GJ

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY R. SUMMERS and GEORGE T. LENORMAND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UAL CORPORATION ESOP COMMITTEE, MARTY TORRES, BARRY WILSON, DOUG WALSH, IRA LEVY, DON CLEMENTS, CRAIG MUSA and STATE STREET BANK & TRUST COMPANY,<br><br>Defendants. | No. 03 C 1537 |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for class certification. For the reasons stated below, we grant the motion for class certification.

### BACKGROUND

Plaintiffs were all participants in the United Airlines Corporation Employee Stock Ownership Plan ("Plan"). According to Plaintiffs, United Airlines ("UAL")

1

was in financial trouble in July of 2001, and after September of 2001, UAL's financial position worsened. Plaintiffs claim that from August of 2001 to August of 2002, UAL stock prices fell over 80 percent in value. Plaintiffs contend that up until August of 2002, neither Defendant UAL Corporation ESOP Committee ("Committee"), the named fiduciary of the Plan, nor Defendant State Street Bank & Trust ("State Street"), the trustee of the plan, took appropriate actions to protect the Plan assets by diversifying the stock held by the Plan. It is further alleged by Plaintiffs that the Committee members were not even aware of their fiduciary duties owed to the Plan. According to Plaintiffs, in September of 2002, State Street notified the Committee of its fiduciary duties and nine days later, on September 27, 2002, the Committee began selling the Plan's UAL stock. Plaintiffs claim that by September 27, 2002, the UAL stock had already dropped to $2.36 per share and the Plan had already lost approximately two billion dollars as a result of the decrease in the value of the stock. The named Plaintiffs in the instant action now seek to certify a class.

## LEGAL STANDARD

A plaintiff seeking class certification must first satisfy the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)"). Rule 23(a) provides the following:

One or more members of a class may sue or be sued as representative parties

on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Failure by a plaintiff to satisfy any one of the above requirements in Rule 23(a) precludes a court from granting the certification of a class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). If a plaintiff is able to satisfy all of the requirements of Rule 23(a), the district court must then determine whether a plaintiff's action can be maintained as a class action by meeting one of the requirements of Federal Rule of Civil Procedure 23(b)("Rule 23(b)"). *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2001)(explaining Rule 23(b).

In order to determine whether a class should be certified, a court may make any factual and legal inquiries necessary under Rule 23. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). A court need not accept a plaintiff's assertions as conclusive, but may receive any evidence necessary to make a decision on class certification. *See id.* (explaining why the court accepts a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) but does not when ruling on class certification motions under Rule 23).

## DISCUSSION

Defendants concede that Plaintiffs can satisfy the numerosity prong and the commonality prong of Rule 23(a). Defendants argue however, that Plaintiffs cannot meet the requirements of the typicality prong or the adequacy of the representation prong of Rule 23(a). Defendants also contend that Plaintiffs cannot satisfy any of the prongs of Rule 23(b).

### I. Typicality Prong

Defendants argue that the claims of the named Plaintiffs are not typical of those of the potential class members. A plaintiff's claim is deemed to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 ($7^h$ Cir. 1992)(quoting *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). In order to satisfy the typicality requirement, movants are not required to show that "all class members suffer[ed] the same injury as the named class representative" and in making the typicality determination the court should consider "the defendant's conduct and the plaintiff's legal theory. . . ." *Id.*

In the instant action, the class members will be pursuing the same legal theories based upon Defendants' alleged misconduct. The facts surrounding Defendants' alleged misconduct are also the same for the named Plaintiffs and other

4

class members. Thus, the named Plaintiffs' claims are clearly typical in comparison to the claims of the other class members.

Defendants argue that the named Plaintiffs' claims are not typical because approximately 125 potential class members have signed releases in favor of Defendants. Defendants argue that since none of the named Plaintiffs in the instant action signed such releases, their claims are not typical of class members' claims. We cannot agree. If anything, Defendants' position illustrates the similarity and typicality of the named Plaintiffs' claims. Defendants do not contest Plaintiffs' assertion that there are approximately 50,000 potential class members. The only argument regarding typicality presented by Defendants is thus, that the named Plaintiffs' claims may have some differences with one fifth of one percent of the potential class members' claims. Thus, Plaintiffs' claims are admittedly typical in regards to well over 99 percent of the other potential class members' claims. Even in regards to the potential class members that signed releases, we do not find that the releases are of such importance as to distinguish the named Plaintiffs' claims from the claims of the potential class members who signed releases. There is no requirement in the typicality prong that the named Plaintiffs' claims be exactly the same as all class members. There is no reason why the court cannot address the release issues for the 125 potential class members as part of the class action. For any or all of those 125 potential class members who successfully establish that the releases are not valid and enforceable, those class members' claims will fall in line

with all of the claims of the other class members when addressing the alleged misconduct by Defendants. Such an approach would promote judicial economy. Even though the named Plaintiffs did not sign releases, they indicate that they will vehemently litigate the release issues and argue on behalf of the class members that signed the releases. We do not find that the release issue is such that it would warrant deeming the named Plaintiffs' claims as not being typical in regards to the claims of class members that signed releases.

Defendants also argue that "certification of this class literally would deprive Defendants of their rights to assert the defense of release against those members who signed releases." (Com Ans. 9). However, simply because this court certifies a class, does not mandate that Defendants are limited to presenting defenses that are applicable to all class members and Defendants have failed to provide any legal support or reasoning for such a position. Thus, Defendants have failed to show that they will be deprived of the right to assert any defenses if a class is certified. Defendants also state that "disputes as to the validity of releases require individualized inquiry and creates conflict between the class members, barring certification." (Com Ans. 9). However, Defendants fail to show how the resolution of the release issues for each individual Plaintiff in question would create any conflict. Also, the fact that there may be some "individualized inquiry" does not mandate a denial of class certification. If such were the rule, no class would ever be certified unless all the claims were entirely identical. Also, under Defendants'

argument no class can ever be certified if a defendant persuades one out of a possible class of 500 individuals to sign a release. Such an argument fails. We are convinced that the "individualized inquiry" in this instance would be minimal and should properly be incorporated into this class action as it would promote judicial economy. Therefore, we find that Plaintiffs have met the requirements of the typicality prong of Rule 23(a).

## II. Adequacy of Representation Prong

Defendants argue that the named Plaintiffs acting as representative parties cannot "fairly and adequately protect the interests of the class" because the named Plaintiffs have conflicts with other class members. (Com Ans. 10). However, the named Plaintiffs and the other class members have a united interest in pursuing the common legal claims to recover for Defendants' alleged misconduct.

### A. Plan Members' Requests To Retain Stock

Defendants contend that "numerous participants in the UAL ESOP requested that Defendants and State Street *not* sell their stock" and that "[t]heir objections ranged from writing letters to other ESOP participants, to posting their objections on various websites and chat rooms." (Com Ans. 11). Defendants also contend that some of the potential class members retired and elected not to take a distribution and, since they chose to continue to participate in the Plan, they impliedly indicated

that they did not want the Plan to sell the UAL stock. Defendants argue that the named Plaintiffs' positions regarding the sale of UAL stock would thus conflict with all of the positions of class members who asked that the stock not be sold.

First of all, if the Committee merely acquiesced to the demands of a few of the Plan participants asking for the retention of stock, the Committee would not have adequately protected the interests of the other Plan participants. The Committee owes an obligation to all of the Plan participants including those who did not make requests that the stock not be sold and thus, the Committee could not simply consider the desires of the few Plan participants who made requests to the Committee or made their opinions known.

Secondly, in the context of determining whether the named Plaintiffs' positions are in conflict with the positions of other class members, the desires of the Plan participants are by and large irrelevant. Regardless of whether some of the Plan participants requested that the UAL stock not be sold, Defendants, acting in their fiduciary capacity were required to focus on the general interest of the Plan participants as investors. *See Summers v. State Street Bank and Trust Co*, 104 F.3d 105, 108 (7th Cir. 1997)(stating in prior action involving the Plan that "[t]he trustee's sole duty is to the participants as participants" and that to focus on the specific interests of some of the participants "would be picking and choosing among beneficiaries, in violation of the traditional duty imposed by trust law of impartiality among beneficiaries."). Defendants were thus prohibited from taking a course of

action simply because some of the Plan participants desired that course of action. Even if some class members demanded that the stock not be sold, Defendants acting in their fiduciary capacity were obligated to sell the stock if it was in the best interest of the Plan. Defendants, acting as fiduciaries, were thus obligated to ignore a hazardous course of action advocated by some Plan participants and, in essence, protect those Plan participants from their own wishes.

This reasoning explains why even the class members that contacted the Committee and demanded that the UAL stock not be sold can pursue a claim for breach of fiduciary duty against Defendants. There is no law that prohibits Plan participants from making requests to the Committee or making their opinions known to the Committee. However, as a fiduciary, the Committee may be obligated at times to take a course of action contrary to the expressed wishes of Plan participants and make decisions that are fiscally sound. Thus, Defendants cannot avoid liability against certain class members on the breach of the fiduciary claims by arguing that Defendants were merely complying with those Plan participants' wishes. The desires of the Plan participants did not relieve Defendants of their fiduciary obligations. Thus, Defendants have failed to show that the requests and opinions of Plan participants regarding the retention of UAL stock creates any conflicts that would draw into question the adequacy of the named Plaintiffs' representation.

We note that in making such a ruling we are not ruling that the evidence of the requests by Plan participants is entirely irrelevant in this action. Although the

requests and opinions of Plan participants do not create any conflicts prohibiting class certification, the class members' communications in this regard, viewed together as a body of evidence may have some relevance in this action. For example, the evidence may be relevant to the extent that the information contained in such communications can shed some light upon whether Defendants had a legitimate basis to conclude that the Plan should not sell the UAL stock because such a course of action was in the best interest of the Plan participants in general as investors. Thus, we are not ruling at this juncture that all such evidence is excluded on the basis of relevancy.

### B. Class Members' Opinion Regarding Sale Date

Defendants argue that, based upon the depositions of the named Plaintiffs, the class members will not be able to agree as to when the UAL stock should be sold. However, Defendants' contention that there will be conflicts among the class members in this regard is nothing more than speculation. Even if the opinions of class members regarding when the stock should have been sold vary, such differences in opinion do not create conflicts. It is the job of the class members' counsel to listen to the class members' opinions and the facts provided by class members and then to research the pertinent law to determine when Defendants should have sold the UAL stock. It is that unified position taken by the class members that is pertinent and Defendants have failed to point to any evidence that

shows that the named class representatives cannot represent the claims of the rest of the class members in this regard.

### C. Union Conflicts

Defendants argue that since the creation of the Plan, Plan participants who are members of certain unions have disagreed as to whether or not the Plan should exist at all. For the reasons explained above, Defendants acting in a fiduciary capacity should not have considered the views and desires of the unions any more than the individual desires of Plan participants. We agree with Plaintiffs that Defendants lack any evidence to substantiate the alleged conflicts and Defendants' position is based upon nothing more than speculation. Therefore, we conclude that the named Plaintiffs have shown that they can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

## III. Rule 23(b) Requirement

Defendants argue that Plaintiffs cannot satisfy any of the alternatives provided for in Rule 23(b). Plaintiffs contend that they can meet the requirements of Rule 23(b)(1) and Rule 23(b)(3).

### A. Rule 23(b)(1)

Federal Rule of Civil Procedure 23(b)(1) provides the following:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1). In regards to Rule 23(b), Defendants devote virtually all of their arguments to Rule 23(b)(3) and Defendants offer only one conclusory paragraph in response to Plaintiffs' contention that they can proceed under Rule 23(b)(1). Defendants fail to address the majority of the issues raised in regards to Rule 23(b)(1). We agree with Plaintiffs that a class action would avoid inconsistent determinations in regards to the alleged misconduct by Defendants and avoid the possibility that Defendants might face inconsistent obligations owed to individual plaintiffs. Therefore, we conclude that Plaintiffs have shown that they can meet the requirements of Rule 23(b)(1).

B. Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) provides the following:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). The issues relating to Defendants' alleged misconduct will involve a common set of facts and issues that will predominate over any issues pertinent only to individual class members. Defendants do not even contest this point. We also conclude that a class action would be the superior method to ensure an efficient resolution of all of the class members' claims and would promote judicial economy.

13

Defendants state that a derivative action, as opposed to a class action, would be a superior method to resolve the class members' claims. Defendants contend that a derivative action "promotes efficiency, economy, inexpensiveness and fairness." (Com Ans. 13). We are not convinced that a derivative action would be a superior method of resolution in the instant action. While Defendants may choose to focus on limiting the expenses associated with the litigation, we must also consider what is ultimately the most efficient and effective manner to proceed.

Defendants state that the parties have a right to an interlocutory appeal of a class certification ruling pursuant to Federal Rule of Civil Procedure 23(f). However, Defendants fail to offer any explanation as to why the provision of an interlocutory appeal shows that a derivative action is a superior method as compared to a class action. In fact, the availability of an interlocutory appeal promotes judicial economy in this instance because it allows the certification issue to be settled at the beginning of the action and therefore allows the parties to proceed on one decided course during discovery and the proceedings. Defendants also state that for a class action there are certain required notices that must be mailed out, but again Defendants fail to explain why the notices provisions show that a derivative action is a superior method as compared to a class action. We can only infer from the vagaries provided by Defendants and by their reference at one point to "inexpensiveness" that Defendants view such notice requirements as wasteful expenses. We do not deem such notices as wasteful and note that they appropriately

ensure that all class members' interests are protected. Defendants also state that, for a class action, if there is a settlement there will be a court-approved administration of a Plan-wide settlement. However, again, Defendants fail to explain why such a settlement procedure will not be an efficient way to resolve the claims. Defendants have failed to show that a derivative action would be a superior method of resolving the class members' claims. It is clear that in this action a class action would be the superior method and would promote the most efficient and effective resolution of the class members' claims. Therefore, we conclude that Plaintiffs have shown that they can satisfy the requirement of Rule 23(b)(3).

## CONCLUSION

Based on the foregoing analysis, we grant Plaintiffs' motion for class certification.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 17, 2005