IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JERRY R. SUMMERS and GEORGE T. )
LENORMAND, individually and on )
behalf of all others similarly situated, )
)
      Plaintiffs, )
)
v. )   No. 03 C 1537
)
UAL CORPORATION ESOP )
COMMITTEE, MARTY TORRES, )
BARRY WILSON, DOUG WALSH, )
IRA LEVY, DON CLEMENTS, CRAIG )
MUSA and STATE STREET BANK )
& TRUST COMPANY, )
)
      Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for approval of allocation plan and request for costs and fees. For the reasons stated below, we grant Plaintiffs' motion in its entirety.

1

## BACKGROUND

Plaintiffs, who were all participants in the United Airlines Corporation Employee Stock Ownership Plan ("Plan"), filed the instant action in February 2003, claiming that Defendant United Airlines Corporation ESOP Committee ("Committee"), the named fiduciary of the Plan, and Defendant State Street Bank & Trust Company ("State Street"), the Plan trustee, breached their fiduciary duties to Plaintiffs. According to Plaintiffs, the actions by both Defendants caused the Plan to lose approximately two billion dollars as a result of the decrease in the value of the stock. On October 28, 2005, the Court approved a settlement agreement between the Committee and Plaintiffs, under which the Committee agreed to pay Plaintiffs $5.25 million. On that same day, the court granted State Street's motion for summary judgment.

## DISCUSSION

I. Attorneys' Fees

Plaintiffs are seeking approval of their request for attorneys' fees and costs. A district court has a serious responsibility to carefully review a request for attorneys' fees in class action settlements, in order to "'determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion.'" *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002)(citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000)). In other words, the court must "protect the

members of a class in class action litigation from lawyers for the class who may, in derogation of their professional and fiduciary obligations, place their pecuniary self-interest ahead of that of the class." *Id.* According to the Seventh Circuit, attorneys' fees in class actions may be calculated by using the lodestar approach, under which reasonable hourly rates are multiplied by the hours reasonably expended by the attorneys, which is then multiplied by a risk multiplier that is to be determined at the district court's discretion. *Cook v. Niedert,* 142 F.3d 1004, 1013 (7th Cir. 1998). The amount of attorneys' fees may also be calculated as a percentage of the settlement fund. *Id.* While either approach is appropriate, it is proper for the court to compare the outcomes under both approaches, in order to make sure that we are "award[ing] counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Marketing Litigation,* 264 F.3d 712, 718 (7th Cir. 2001).

In the instant action, Plaintiffs are seeking $850,000 in costs and $850,000 in attorneys' fees, for a total of $1.7 million. To arrive at the $850,000 in attorneys' fees, Plaintiffs calculated the lodestar to be approximately $2.1 million, which they then multiplied by a negative risk multiplier of 40 percent. According to Plaintiffs, the negative multiplier is in recognition of the fact that the $5.25 settlement "does not provide anywhere near a full remedy for the Settlement Class." (Mot. 10).

We find that the attorneys' fees requested by Plaintiffs are entirely reasonable based upon the record. Even though the $5.25 million may be less of a recovery than Plaintiffs had hoped to receive, their counsel worked diligently to obtain a settlement with the Committee that was reasonable under the facts of this case. Plaintiffs' counsel also took on a large risk when they brought this lawsuit under a contingency agreement. Furthermore, under any method of calculation, the requested $1.7 million is entirely reasonable. Applying the lodestar method, the $850,000 in attorneys' fees would mean an hourly rate of less than $150 after the negative multiplier is applied. Clearly $150 an hour is a reasonable hourly rate for such litigation. Additionally, the requested $850,000 in attorneys' fees is only 16% of the gross settlement, which is clearly within the range of what has been deemed reasonable by the Seventh Circuit. *See Matter of Continental Illinois Securities Litigation*, 962 F.2d 566, 572 (7th Cir. 1992)(stating that courts should apply a sliding scale to attorneys' fees in class actions, awarding, for example, "33 percent of the first million, 25 percent of the next million, and so on down"). Finally, we note that only six class members out of over 70,000 have filed objections to the proposed attorneys' fees and costs. None of the six objecting class members appeared in court for the fairness hearing. However, the court has considered the objections, and we find that the objections are general dissatisfaction relating to the loss of the class members' pension funds, and that they represent a very small percentage of the overall class members. Therefore, we grant Plaintiffs' request for

$850,000 in attorneys' fees.

We also find that Plaintiffs' request for $850,000 in costs is reasonable, given the fact that this complex litigation has continued for over two years and that Plaintiffs' attorneys actually expended $866,512.24. Also, as stated above, we have only received six objections to this amount from class members. Therefore, we grant Plaintiffs' request for $850,000 in costs.

II. Allocation Plan

Plaintiffs are also seeking approval of their allocation plan. Under the proposed plan, the settlement funds that remain after costs and attorneys' fees are deducted will be disbursed to the class members on a pro rata basis, based on the number of shares of United Airlines stock that each class member held on July 1, 2001. July 1, 2001, is the date closest to the beginning of the class period, which began on July 19, 2001, on which the number of shares held by each class member can be calculated. For Plaintiffs that are currently employed by United Airlines and participating in the company's 401(k) plan, the settlement amounts will be disbursed directly into their accounts. Other class members will receive checks for their settlement amounts.

As with all aspects of class action settlements, we must ensure that any allocation plan is reasonable and equitable to all class members. *See E.E.O.C. v.*

*Hiram Walker & Sons, Inc.*, 768 F.2d 884, 891 (7th Cir. 1985)(considering reasonableness of settlement disbursement). Given that the settlement funds in the instant action will be disbursed on a pro rata basis to all class members, we find that the allocation plan is reasonable and, thus, we grant Plaintiffs' motion for approval of the allocation plan.

## CONCLUSION

Based on the foregoing analysis, we grant Plaintiffs' motion for approval attorneys' fees and costs, and the allocation plan.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 22, 2005